**WAL–MART STORES, INC., Appellant–Defendant Below,**

v.

**Delmar E. BLAYLOCK, Appellee–Plaintiff Below.**

**No. 82A04–9102–CV–38.[1]**

Court of Appeals of Indiana,
Third District.

May 18, 1992.

1. This case was transferred to this office by order of the Chief Judge.

Melissa S. Mattingly, Fine & Hatfield, Evansville, for appellant-defendant.

Robert L. Simpkins, Robert L. Simpkins & Associates, Evansville, for appellee-plaintiff.

STATON, Judge.

Wal–Mart Stores, Inc. appeals a judgment in favor of Delmar E. Blaylock, raising three issues for our review:

 I. Whether the trial court properly granted a judgment on the evidence at the close of the defendant's case as to the comparative negligence of Blaylock.

 II. Whether the trial court erred in refusing a number of the defendant's instructions on comparative fault and in giving a number of the plaintiff and the court's instructions over Blaylock's objection.

 III. Whether the jury's verdict was excessive.

We affirm.

On August 30, 1988, Delmar Blaylock, a seventy-five year old retired gentleman, was walking down an aisle in the Boonville Wal–Mart store when he heard a noise. He turned to find that a stack of decorative trunks arranged on an "end cap" at the end of an aisle was falling toward him. He spun and warded the boxes away from him, but in stepping back, hit his foot against a display on the opposite side of the aisle and sustained injuries.

Blaylock brought suit against Wal–Mart, and trial was had before a jury. At the close of Wal–Mart's case, the trial court granted Blaylock's motion for judgment on the evidence as to his comparative negligence, finding that there was no evidence that Blaylock was at fault in the incident. Accordingly, the trial court did not instruct the jury that it could consider the comparative fault of Blaylock in reaching its verdict. The jury returned a verdict for $50,-000 and judgment was entered on the verdict. Wal–Mart appeals.

## I.

### Judgment on the Evidence

■ On appeal, we use the same standard of review as the trial court in deter-

mining the propriety of a judgment on the evidence. *Dahlin v. Amoco Oil Corp.* (1991), Ind.App., 567 N.E.2d 806, 810, *transfer denied.* When the trial court considers a motion for judgment on the evidence, it must view the evidence in a light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Id.; Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223, 1224.

■ Wal–Mart argues that the trial court erroneously granted judgment on the evidence on the issue of Blaylock's comparative fault, arguing that based upon the evidence in the case, the jury could draw an inference that Blaylock was contributorily negligent. Specifically, it points to testimony: that Blaylock saw no one other than himself in the area at the time of the accident; that there was no evidence that the trunks were in disarray at the time of the accident; that the trunks were in a high-traffic area and had been there for some time but had not yet fallen; and that only the trunks in the row closest to Blaylock fell. Wal–Mart also questions Blaylock's description of the incident, and alludes to the fact that Blaylock went and picked up some motor oil before reporting the accident.

■ We cannot say that this evidence raises an inference that Blaylock was contributorily negligent. Wal–Mart concedes that the uncontradicted evidence revealed that Blaylock was walking in the center of the four foot wide aisle when the accident happened, about two feet away from the display. There was no evidence whatsoever that Blaylock bumped or even touched the display. Wal–Mart supports its argument by citing the lack of evidence of a number of explanatory factors, which it contends permits an inference that Blaylock's negligence caused the incident. In *Lewis by Lewis v. Bonahoom* (1991), Ind. App., 583 N.E.2d 175, we rejected the contention that a lack of evidence on a proposition allows the trier of fact to draw an inference that its converse occurred. A

jury can infer negligence from the facts proved, but cannot infer the existence of facts which would constitute negligence. *Northern Indiana Public Service Co. v. Stokes* (1986), Ind.App., 493 N.E.2d 175, 180. Thus, the evidence recited by Wal–Mart does not support an inference that Blaylock knocked over the trunks and caused his own injury.

■ Wal–Mart also notes that "fault" is statutorily defined to include "unreasonable failure ... to mitigate damages." IND.CODE 34–4–33–2(a). Blaylock's doctor prescribed Motrin to help alleviate the pain in his foot from the accident. Wal–Mart argues that the evidence that Blaylock ceased taking the Motrin for a time constituted unreasonable failure to mitigate damages, and therefore justified submitting Blaylock's contributory fault to the jury. A review of the record, however, reveals that Blaylock had ceased taking the Motrin for a period of time while he had the flu because he felt it might have been causing or aggravating his headaches and nausea, and resumed taking it after he recovered. We fail to see how this evidence, viewed in any light, could constitute an unreasonable failure to mitigate the damages.

We conclude that the trial court did not err in granting Blaylock's motion for judgment on the evidence on the issue of Blaylock's contributory fault.

## II.

### *Instructions*

■ In considering whether any error results from the giving or refusal of instructions, we consider 1) whether the tendered instruction correctly states the law, 2) whether there is evidence in the record to support giving the instruction, and 3) whether the substance of the instruction is covered by other instructions which are given. *Picadilly, Inc. v. Colvin* (1988), Ind., 519 N.E.2d 1217, 1219; *State v. Edgman* (1983), Ind.App., 447 N.E.2d 1091, 1108, *transfer denied.*

Wal–Mart makes two arguments regarding instructions. The first focuses on the

fact that the trial court did not instruct the jury on Blaylock's comparative fault because it ruled in favor of Blaylock on the motion for judgment on the evidence on that issue. The trial judge also refused a number of Wal–Mart's comparative fault instructions, and Wal–Mart withdrew some instructions based upon the trial court's ruling on the motion for judgment on the evidence. We held above that the trial court did not err in granting Blaylock's judgment on the evidence with regard to contributory fault, as there was no evidence which would support a finding of fault on the part of Blaylock. Thus, Wal–Mart's argument does not pass the second prong of the above test—there is no evidence in the record to support giving Wal–Mart's instructions.

■ Wal–Mart's second argument relates to its duty of care. The trial court gave a modified version of plaintiff's instruction number 7:

> The Court instructs the jury that the Defendant, Wal–Mart, had and has an active and continuous duty and obligation to inspect their premises from time to time in a reaonable [sic] effort to discover and remedy defects that make said premises unsafe for use by customers such as the Plaintiff, Delmar Blaylock. The Defendant, Wal–Mart, cannot ignore a dangerous condition and escape liability by arguing that it did not know of this danger.
>
> The Court further instructs the jury that the Defendant, Wal–Mart, is charged with actual knowledge of a dangerous condition created by its own act or that of its employees.

Record, p. 554. Wal–Mart argues that the instructions are a misstatement of Indiana law. Instead, it contends that the trial court should have given its tendered instruction number 9, which states:

> I instruct you that the defendant cannot be held to have failed in its duty to exercise reasonable care to keep its premises in a reasonably safe condition unless you find from a preponderance of the evidence that: Number 1, the chests in question were improperly or negligent-

ly stacked at the time and place in question; and Number 2, the defendant had actual knowledge that the stacking of the chests created a dangerous condition or that such dangerous condition had existed for such a length of time and under such conditions that it would have been discovered by the defendant in the exercise of reasonable care.

Record, p. 578.

Blaylock was an invitee of Wal–Mart, and was therefore owed a duty to exercise reasonable care for his protection while he was on Wal–Mart's premises. *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, 639. This duty is otherwise described in the Restatement (Second) of Torts § 343 (1965), cited with approval in *Burrell, supra:*

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Wal–Mart notes that the instruction given states that Wal–Mart is charged with actual knowledge of a condition created by it or its employees, while Wal–Mart's instruction requires the trier of fact to find actual knowledge on the part of the defendant. It argues that its instruction is the more accurate statement of Indiana law, citing *F.W. Woolworth Co. v. Jones* (1955), 126 Ind.App. 118, 130 N.E.2d 672. In *Woolworth*, this court reversed a judgment for the plaintiff, who sustained injuries from a four-inch splinter in the greeting card counter of a retail store, on the basis that the plaintiff had failed to prove actual or constructive knowledge of the dangerous condition on the part of the retail store.

Upon a cursory reading of *Woolworth,* however, one discovers the following language:

> The nature and extent of a storekeeper's duty to his customer has long since been definitely settled by our courts. While he is not an insurer of their safety he is, nevertheless, required to exercise reasonable care to keep his store in a safe condition for the use he impliedly invites customers to make of it. This duty is an active and continuous one and carries with it the necessity of making such inspection of his premises from time to time as an ordinarily prudent man would make in a reasonable effort to discover and remedy defects that make said premises unsafe for his customers' use. *A storekeeper is charged with actual knowledge of a dangerous condition created by his own act or acts of his employees within the scope of their employment,* and with constructive knowledge thereof if such condition has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care.

*Id.,* 130 N.E.2d at 673 (citations omitted, emphasis added). The plaintiff in *Woolworth* chose to rely on the theory of constructive notice, and there was no evidence that the condition was created by an employee of the retail store. The facts in *Woolworth* are distinguishable from this case, where there was direct evidence that the trunks were stacked by an employee of Wal–Mart. Moreover, the language in *Woolworth* supports the instruction tendered by Blaylock and given as modified by the trial court. The instruction was a correct statement of the law, and the trial court did not err in refusing Wal–Mart's tendered instruction.

### III.

#### *Damages*

 Wal–Mart argues that the damages which the jury awarded were excessive. Wal–Mart's appeal on this issue is governed by a strict standard of review. A damage award will not be reversed if it is within the scope of the evidence. *Dunn v. Cadiente* (1987), Ind., 516 N.E.2d 52, 54, *reh'g denied.* When reviewing the evidence, we may not reweigh the evidence or judge the credibility of the witnesses. *Id.* A judgment is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element. *Eakin v. Mitchell–Leech* (1990), Ind.App., 557 N.E.2d 1057, 1060, *transfer denied.*

 Wal–Mart makes much of the fact that the $50,000 damage award equals approximately thirty-three times Blaylock's special damages. However, in addition to the evidence of special damages, Blaylock also introduced evidence that following the injury, Blaylock was incapacitated for a period of two months and was unable to negotiate the stairs to the second level of his house or to sleep with his wife in their upstairs bedroom. Evidence was also introduced that he was unable to hunt and fish as he had before and was forced to sell his boat, that he had problems sleeping unlike before, that his foot still hurt and suffered cramps at the time of trial, that his marriage had been "pretty rough" since the injury due to his inactivity, and that he used a cane for almost a year after the accident. His doctor testified that surgery on his foot was recommended, although the success was not guaranteed. The surgery would involve additional medical expenses. Two physicians testified that the injury was permanent in nature, and there was evidence that Blaylock would continue to experience pain in the future. This evidence was adequate to support the jury's verdict for $50,000.

Affirmed.

CHEZEM and CONOVER, JJ., concur.